UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DAVID AARON GOODWILL,

      Petitioner,

                                         Case No. 1:10-cv-821
v.                                         Hon. Robert J. Jonker

CARMEN PALMER,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

      Petitioner, David Aaron Goodwill, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.        Background

      Following a jury trial, petitioner was convicted of first-degree premeditated murder, M.C.L. § 750.316(1)(a), in the stabbing death of Jason Fontenot, which occurred on or about October 16, 2005. *People v. Goodwill*, No. 275244, slip op. at p. 1 (Mich. App. April 10, 2008) (docket no. 17). Petitioner was sentenced to mandatory life in prison and restitution in the amount of $10,969.95. *Id.*; Judgment of Sentence (Dec. 11, 2006) (docket no. 17).

      Petitioner, through counsel, appealed his conviction to the Michigan Court of Appeals, raising four issues:

    I.      Was [petitioner] denied his constitutional right of confrontation and his constitutional right to present a defense by the trial court's erroneous exclusion of the testimony of a witness who could have disproven the prosecutor's theory of motive. US Const Am VI; XIV?

    II.     Was [petitioner] denied a fair trial by the introduction of a knife which had no connection to the charged offense, and by the police

officer's testimony that finding the knife was "an act of God." US Const Am XIV?

III.      Was [petitioner] denied a fair trial by the introduction of opinion testimony as to a defendant's guilt. US Const Am XIV?

IV.     Was [petitioner] denied a fair trial by the prosecutor's misconduct, including comments which violated [petitioner's] Fifth Amendment right to remain silent, appeals to the jury's sympathy, and misstating the testimony. US Const Am XIV?

Brief (docket no. 17).

The Michigan Court of Appeals affirmed petitioner's convictions. *Goodwill*, No. 275244. Petitioner raised the same issues in his application for leave to appeal to the Michigan Supreme Court, which that court denied because it was not persuaded that the questions presented should be reviewed. *People v. Goodwill*, No. 136464 (Mich. Sept. 9, 2008) (docket no. 18).

Petitioner filed a *pro se* motion for relief from judgment pursuant to MCR 6.500 *et seq.*, raising five issues:

I.      [Petitioner's] conviction should be reversed where the prosecution failed to present sufficient evidence to satisfy the due process standard of guilt beyond a reasonable doubt.

II.     Trial counsel was constitutionally ineffective for failing to move for a change of venue; and failing to call an expert witness.

III.     The trial court abused its discretion where it acted as an unsworn witness for the prosecution; denied defense's motion for mistrial; gave an erroneous instruction to the jury regarding the term "victim"; and permitted the jury to hear improper character testimony.

IV.     [Petitioner] was deprived of his 14th Amendment constitutional right to a fair trial and due process of law, where the trial court failed to sua sponte instruct the jury with a cautionary instruction on accomplices, when evaluating the testimony of Ken Milbocker.

V. The trial court plainly erred in awarding $10,969.95 in restitution. In addition, trial counsel rendered ineffective assistance of counsel in failing to object at sentencing to the excessive restitution ordered.

Motion for relief from judgment (docket no. 20). The trial court denied the motion in a four-sentence order. *See* Order (docket no. 1-13 at p. 2).

Petitioner filed a motion for leave to appeal to the Michigan Court of Appeals, raising five issues:

I. Should [petitioner's] conviction be reversed where the prosecution failed to present sufficient evidence to satisfy the due process standard of guilt beyond a reasonable doubt?

II. Was trial counsel constitutionally ineffective for failing to move for a change of venue; and failing to call an expert witness?

III. Did the trial court abuse its discretion where it acted as an unsworn witness for the prosecution; denied defense's motion for mistrial; gave an erroneous instruction to the jury regarding the term "victim"; and permitted the jury to hear improper character testimony?

IV. Was [petitioner] deprived of his 14th Amendment constitutional right to a fair trial and due process of law, where the trial court failed to sua sponte instruct the jury with a cautionary instruction on accomplices, when evaluating the testimony of Ken Milbocker?

V. Did the trial court plainly erred [sic] in awarding $10,969.95 in restitution and was trial counsel rendered [sic] ineffective assistance of counsel in failing to object at sentencing to the excessive restitution ordered?

Application for leave to appeal (docket no. 19). The Michigan Court of Appeals denied the application because petitioner "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Goodwill*, No. 293664 (Mich. App. Nov. 30, 2009) (docket no. 19). Petitioner raised the same issues in an application for leave to appeal to the Michigan Supreme Court, which that court also denied because petitioner "failed to meet the burden of establishing

3

entitlement to relief under MCR 6.508(D)." *People v. Goodwill*, No. 140404 (Mich. July 26, 2010) (docket no. 20).

Petitioner has raised the following nine issues in his habeas petition:

I.      [Petitioner] was denied his constitutional right of confrontation and his constitutional right to present a defense by trial court's erroneous exclusion of the testimony of a witness who could have [disproven] the prosecutor's theory of a motive.

II.     [Petitioner] was denied a fair trial by the introduction of a knife which had no connection to the charged offense, and by the police officer's testimony that finding the knife was "an act of God".

III.    [Petitioner] was denied a fair trial by the introduction of opinion testimony as to a defendant's guilt.

IV.    [Petitioner] was denied a fair trial by the prosecutor's misconduct, including comments which violated defendant's fifth amendment right to remain silent, appeals to the jury's sympathy, and [misstating] the testimony.

V.     [Petitioner's] conviction should be reversed where the prosecution failed to present sufficient [evidence] to satisfy the due process standard of guilt beyond a reasonable doubt.

VI.    [Petitioner's] trial counsel was constitutionally ineffective in failing to move for a change of venue; and failing to call and expert witness.

VII.   The trial court abused it's discretion where it acted as an unsworn witness for the prosecution; denied defense's motion for mistrial; gave an erroneous instruction to the jury regarding the "victim"; and permitted the jury to hear improper character testimony.

VIII.  [Petitioner] was deprived of his 14th Amendment constitutional right to a fair trial and due process of law, where the trial court failed to sua sponte instruct the jury with a cautionary [instruction] on accomplices, when evaluating the testimony of Ken Milbocker.

IX.    The trial court plainly erred in awarding $10,969.95 in restitution. In addition, defense counsel rendered ineffective assistance of counsel in failing to object at sentencing to the excessive restitution ordered.

Petition (docket no. 1).

## II. Procedural default

### A. Plain error review

Respondent contends that petitioner's Issues II, III and IV are procedurally defaulted, because the Michigan Court of Appeals engaged in a limited "plain error" review of those issues.[1] Issue II involves two sub-issues, i.e, whether the trial court erred in admitting a knife into evidence and whether the trial court properly denied defense counsel's belated request to strike testimony in which a deputy stated that finding the knife (which could have been the murder weapon) was an "act of God." With respect to Issue II, the Michigan Court of Appeals' opinion only addressed the deputy's statement for plain error. *Goodwill*, No. 275244, slip op. at pp. 2-3. Issue III also involves two sub-issues, i.e., whether the trial court erred in admitting the opinion of pathologist Dr. Start that petitioner's hand wounds were more likely offensive rather than defensive and whether petitioner's taped interview with law enforcement officers touched on the ultimate issue of petitioner's guilt. With respect to Issue III, the Michigan Court of Appeals opinion only addressed Detective Day's statements as being subject to plain error review. *Goodwill*, No. 275244, slip op. at pp. 3-4. Finally, the Michigan Court of Appeals performed a plain error review with respect to all of the claims in Issue IV, which that court referred to as "forfeited claims of prosecutorial misconduct." *Goodwill*, No. 275244, slip op. at p. 4. Accordingly, the Court will only consider the following

---

[1] Respondents recognize that while petitioner first raised Issues V, VI, VII, VIII and IX in his motion for relief from judgment pursuant to MCR 6.500 *et seq.*, the state court did not expressly consider the issues defaulted under MCR 6.508(D)(3). Accordingly, even though none of the three state courts which reviewed those issues provided any analysis to support their respective denials of relief, the Court will treat those issues as denied on the merits. *See Guilmette v. Howes*, 624 F.3d 286, 288 (6th Cir. 2010) (*en banc*) (holding that brief orders which cite only MCR 6.508(D) – i.e., the type of order entered by the Michigan appellate courts this case – "are not explained orders invoking a procedural bar").

claims as subject to procedural default: Issue II (deputy's statement); Issue III (Detective Day's statement); and Issue IV.

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine**.** Only a state procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court mus also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

The procedurally defaulted claims in Issues II (deputy's statement), Issue III (Detective Day's statement) and Issue IV were subject to plain error review due to petitioner's failure to object and preserve these issues for appellate review. Petitioner's failure to comply with the state's contemporaneous-objection rule resulted in a procedural default of these issues for purposes of federal habeas review. *See, e.g., Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009); *Ege v. Yukins*, 485 F.3d 364, 378 (6th Cir. 2007). The state court's plain error analysis did not save

petitioner from the procedural default of these issues. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006). "Plain error analysis is more properly viewed as a court's right to overlook procedural defects to prevent manifest injustice, but is not equivalent to a review of the merits." *Id. See also, Paprocki v. Foltz*, 869 F.2d 281, 284-85 (6th Cir. 1989) (limited review of an issue to prevent manifest injustice does not constitute a waiver of the procedural default). Accordingly, Issue II (deputy's statement), Issue III (Detective Day's statement) and Issue IV are procedurally defaulted.

### B.   Cause and Prejudice

Habeas review of a procedurally defaulted claim is precluded unless petitioner can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750. "[T]he existence of cause for a procedural default must turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Here, petitioner has not shown any cause for his procedural defaults.

### C.   Fundamental miscarriage of justice

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. In *Schlup v. Delo*, 513 U.S. 298 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

*Schlup*, 513 U.S. at 321. To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329. "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence - whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Id*. at 324. Here, petitioner has not presented any new evidence that he was actually innocent of the crime. Having failed to meet this exception, petitioner's Issue II (deputy's statement), Issue III (Detective Day's statement) and Issue IV are procedurally barred and not subject to habeas review.

### III. Standard of review under 28 U.S.C. § 2254

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 776, 130 S. Ct. 1855, 1862 (2010) (internal quotation marks and citations omitted). "Under the

'contrary to' clause, a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001). The presumption of correctness accorded to a state court's findings of fact on federal habeas review also applies to the factual findings of a state appellate court based on the state trial record. *Brumley v. Winegard*, 269 F.3d 629 (6th Cir. 2001).

## IV. Discussion

### A. Petitioner's right of confrontation (Issue I)

Petitioner contends that the trial court denied him the right to confront witnesses and present a defense when it refused to allow the testimony of Ms. Elizabeth Parish.[2] Although

---

[2] Petitioner refers to this witness as "Elizabeth Parrish".

petitioner raised this as a federal constitutional claim, the Michigan Court of Appeals addressed it

as a matter of state law, stating as follows:

> Defendant first argues that the trial court erred by refusing to allow Elizabeth Parish to testify and by refusing to permit cross-examination of Detective Kevin Day regarding Parish. On the third day of trial, during the prosecution's presentation of proofs, the trial court took testimony from Parish outside the presence of the jury. After hearing what she had to say, the court determined that the testimony was of questionable value to either side, and excluded it as being more prejudicial than probative. Defense counsel did not object to the exclusion of her testimony. Later in the day, defendant's audiotaped interrogation by the police was played for the jury. During the interrogation, several references were made to a woman named "Liz." There is no dispute that these were references to Parish. Defendant argues that these references to Parish advanced a possible motive for the killing, i.e., that Fontenot was a rival with defendant for Parish's affections. After Detective Day testified regarding his investigation and interview of defendant, defense counsel indicated that he wanted to call Parish as a defense witness. The trial court denied the request and told both sides that they were not to mention the name in closing arguments. The court also instructed the jury that it had deemed testimony by "Liz" to be irrelevant, and they were not to consider it in any way during their deliberations.

> Although defense counsel had multiple opportunities to request that portions of defendant's taped statement be omitted, he never requested the omission of any of the "Liz" references. Defendant cannot claim that the court erred in not allowing him to pursue a line of questioning about a subject that the court had ruled, without objection by defendant, was irrelevant and inadmissible. We also note that it was defense counsel who brought up the subject of motive in his opening statement and attempted to ask Detective Day whether defendant and Fontenot's alleged rivalry over Parish was considered a motive for the killing. At no time did the prosecution ever mention Parish, question anyone about Parish, or argue that the alleged rivalry was a motive for the killing. In other words, the issue of Parish as a motive was injected into the trial by defendant. If any prejudice inured to defendant, it was the result of his own actions. "[E]rror requiring reversal cannot be error to which the aggrieved party contributed by plan or negligence." *People v. Griffin*, 235 Mich.App. 27, 46, 597 N.W.2d 176 (1999), overruled in part on other grounds *People v. Thompson*, 477 Mich. 146, 730 N.W.2d 708 (2007). Moreover, the jury is presumed to have followed the judge's instruction that any testimony by Parish had been ruled irrelevant and that the jury should decide the case based only on relevant, admissible evidence. *People v. Graves*, 458 Mich. 476, 486, 581 N.W.2d 229 (1998).

> As for defendant's assertion that the exclusion of Parish denied him the opportunity to defend against a theory of guilt advanced by the prosecution, we again

note that the prosecution never argued at trial that Parish was a motive for the killing. Moreover, the absence of Parish's testimony did not destroy defendant's ability to present his self-defense theory. Further, defendant stated during the police interview that Parish had told him that Fontenot was bugging her but that he did not think anything about it. Accordingly, the testimony was properly excluded as irrelevant because it did not have the tendency to make any fact of consequence more or less probable. MRE 401. Therefore, the trial court did not abuse its discretion in denying the admission of Parish's testimony. *Maldonado*, *supra* at 388, 719 N.W.2d 809.

*Goodwill*, No. 275244, slip op. at pp. 1-2.

"The rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973). "Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (internal citations and quotation marks omitted). A criminal defendant, however, does not have an unlimited right to present relevant evidence. *United States v. Scheffer*, 523 U.S. 303, 308 (1998). Rather, the defendant's interest in presenting the evidence is subject to other legitimate interests in the criminal trial process. *Id.*

As a result, state and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials. Such rules do not abridge an accused's right to present a defense so long as they are not arbitrary or disproportionate to the purposes they are designed to serve. Moreover, we have found the exclusion of evidence to be unconstitutionally arbitrary or disproportionate only where it has infringed upon a weighty interest of the accused.

*Id.* (internal citations and quotation marks omitted). "It is therefore clear that even relevant evidence may constitutionally be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." *Alley v. Bell*, 307 F.3d 380, 396 (6th Cir. 2002) (internal quotation marks omitted).

Here, the trial court excluded the testimony of Ms. Parish as irrelevant under the MRE 401. In reaching this determination, the trial court observed that Ms. Parish's testimony regarding her previous relationships with both petitioner and the victim was "clearly more prejudicial than probative" but that the prejudice could affect either the prosecution or the defense ("I'm not sure who it's prejudicial toward. Did it cause [the victim] to do something to [petitioner] or [petitioner] to do something to [the victim]"). Trial Trans. III at p. 671 (docket no. 14). Furthermore, the trial court observed that Ms. Parish's testimony was too ambiguous to be of evidentiary value. *Id.* at pp. 671-72. For example, when asked whether Ms. Parish told petitioner that the victim was "bugging" her before the murder, she responded:

> Well, I'm trying – I'm trying to recall. I may have said that to [petitioner], because [the victim] was being very animated, to the point I was getting to, he was being very animated, I may have said that to [petitioner]. I am not positive, but I'm not going to rule that out. I very possibly did say that to [petitioner].

*Id.* at p. 671. The trial court noted the ambiguity in Parish's proposed testimony that she "may have" spoken to petitioner about the victim (thus providing petitioner with a motive for the murder), by posing a rhetorical question, "[s]o what does the jury do [with Parish's testimony], flip a coin; may have, may not have?" *Id.* at p. 672.

The trial court's application of MRE 401 did not violate petitioner's constitutional right to either present a defense or confront a witness. This is not a case where the state court applied "an arbitrary, mechanistic, per se, or disproportionate rule that would have been contrary to clearly established Supreme Court case law." *See Alley*, 307 F.3d at 396. Rather, the state court excluded evidence after it "weighed the value of the evidence against its potential for confusion and unreliability." *Id.* Under such circumstances, the court cannot grant a writ of habeas corpus. *Id.* Accordingly, petitioner's claim should be denied.

## B.	Evidentiary issue regarding the knife and rock (Issue II)

Petitioner contends that the trial court erred by introducing a rock and a knife into evidence, where the knife did not match the victim's wounds and was not identified as the murder weapon. The Michigan Court of Appeals addressed this evidentiary issue on direct appeal as a matter of state law:

> Defendant next claims that the trial court erred by admitting into evidence a knife and a rock [.] Defendant argues that the prosecution failed to connect the knife and the rock to the charged offense. We disagree. *People v. O'Brien*, 113 Mich.App. 183, 204, 317 N.W.2d 570 (1982) observes that "[t]o lay a proper foundation for the admission of real evidence, the article must be identified as what it is purported to be and shown to be connected with the crime or with the accused, although such identification is not required to be absolute or certain." Identification of the item need not be absolute, positive, certain, or wholly unqualified to justify admission. MRE 901; see also *People v. Hence*, 110 Mich. App. 154, 161, 312 N.W.2d 191 (1981), quoting *People v. Burrell*, 21 Mich.App. 451, 456-457, 175 N.W.2d 513 (1970). If there is "some evidence" presented to establish that foundation, a defendant's objection to its admission is properly directed to the weight of the evidence rather than to its admissibility. *Id.*

> The pathologist who examined Fontenot testified that the wounds inflicted were consistent with a single-edged knife. The knife that was admitted was a single-edged knife that tested positive for the presence of human blood. It was located in the area where defendant stated the killing occurred, near where the police had been searching. It is not an abuse of discretion for a trial court to admit a weapon similar to the one used in the crime and that may have been the weapon used. *People v. Kramer*, 103 Mich.App. 747, 758-759, 303 N.W.2d 880 (1981). It was up to the jury to determine how much weight to give to the knife. Additionally, admission of the weapon was not necessary to place defendant at the scene of the crime or to prove his involvement, as his claim was that of self-defense, and neither the existence of the knife nor the location where it was found was inconsistent with defendant's claim of self-defense. Moreover, even if it was error to admit the weapon, it was likely harmless because the other evidence against defendant was overwhelming. *People v. Burnett*, 166 Mich.App. 741, 752, 421 N.W.2d 278 (1988).

> As for the rock, it was connected to the crime simply because the knife was found resting upon it. *O'Brien*, *supra* at 204, 317 N.W.2d 570. Thus, the limited role of the rock is clear, and it is unlikely that it in some way confused or misled the jury. Moreover, because the blood found on the rock was determined not to be human, the rock was actually admissible under MRE 401 as tending to make it less probable that the knife was the murder weapon (an argument made by defense

counsel during closing arguments). Therefore, the admission of the rock does not appear to be outside the range of principled outcomes. *Maldonado*, *supra* at 388, 719 N.W.2d 809.

*Goodwill*, No. 275244, slip op. at pp. 2-3.

"In general, alleged errors in evidentiary rulings by state courts are not cognizable in federal habeas review." *Moreland v. Bradshaw*, 699 F.3d 908, 923 (6th Cir. 2012). "Trial court errors in state procedure and/or evidentiary law do not rise to the level of federal constitutional claims warranting relief in a habeas action unless the error renders the proceeding so fundamentally unfair as to deprive the petitioner of due process under the Fourteenth Amendment." *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir. 2004). "To show a due process violation under AEDPA rooted in an evidentiary ruling, this court has typically required a Supreme Court case establishing a due process right with regard to that specific kind of evidence." *Moreland*, 699 F.3d at 923. Here, petitioner has not pointed to any clearly established Supreme Court precedent governing the evidentiary matters at issue. Accordingly, petitioner's claim of evidentiary error is not cognizable on federal habeas review.

## C.     Opinion testimony regarding petitioner's guilt (Issue III)

Petitioner contends that he was denied a fair trial when the trial court allowed opinion testimony from the forensic pathologist as to whether he acted in self defense. The Michigan Court of Appeals addressed the issue raised on direct appeal as follows:

Defendant next argues that certain testimony that was admitted constituted improper opinion as to defendant's guilt. It is improper for a witness to "express an opinion on the defendant's guilt or innocence of the charged offense." *People v. Bragdon*, 142 Mich.App. 197, 199, 369 N.W.2d 208 (1985). However, we do not find that any of the challenged testimony constitutes an expression of defendant's guilt.

The forensic pathologist's testimony that the wounds on defendant's hands were more likely offensive than defensive was proper. There was no objection to the

pathologist's expert status, and he based this testimony on his experience and knowledge. Such testimony was helpful to the jury in deciding a material issue. MRE 702; *People v. Beckley*, 434 Mich. 691, 710-711, 456 N.W.2d 391 (1990). Moreover, the pathologist did not unequivocally state that they were offensive wounds, indicating that he could not exclude the possibility that the wounds were defensive. Therefore, whether the wounds were in fact defensive or offensive was left for the jury to decide by weighing the evidence and assessing the credibility of the witnesses. *People v. Avant*, 235 Mich.App. 499, 506, 597 N.W.2d 864 (1999). Therefore, admission of this testimony was not an abuse of discretion. *Maldonado*, *supra* at 388, 719 N.W.2d 809.

*Goodwill*, No. 275244, slip op. at pp. 3-4.

In his state appellate brief (which contains petitioner's arguments on this issue), petitioner did not cite any Supreme Court precedent on whether a forensic pathologist can give opinion evidence regarding offensive or defensive wounds. Rather, petitioner relied on *Cooper v. Sowders*, 837 F.2d 284 (6th Cir. 1988) for the proposition that the Due Process Clause prohibits introduction of opinion testimony as to a criminal defendant's guilt. Petitioner's Appellate Brief at p. 35 (docket no. 17). The Sixth Circuit has summarized the *Cooper* decision as follows:

In *Cooper v. Sowders*, we stated that permitting opinion testimony that directly influences a jury's consideration of guilt or innocence is constitutional error. 837 F.2d 284, 287 (6th Cir.1988). In that case, a police officer testified that "[t]he only evidence we found that would link anyone to this crime would be [the defendant]." *Id.* We noted that "the police officer was [impermissibly] permitted to testify to his own, personal opinion that such evidence as there was against other suspects was insufficient to justify their arrest. . . . This opinion suggests to the jury the guilt of the accused and the innocence of other suspects." *Id.* (quotation marks omitted).

*United States v. Cobb*, 397 Fed. Appx. 128, 134 (6th Cir. 2010).

The evidence at issue here was not that of a police officer regarding the guilt of petitioner and the innocence of other suspects, but rather the testimony of a forensic pathologist, Dr. Start, regarding the circumstances pertaining to the wounds that caused the victim's death. Dr. Start's credentials as an expert were not contested. In determining the victim's cause of death, the doctor offered his expert opinions regarding the nature of the victim's wounds and how the wounds

could have been inflicted on the victim. Because the murder weapon was a knife, the doctor also expressed opinions as to whether the knife wounds suffered by the victim and petitioner were either "offensive" or "defensive." *See* discussions in §§ D and E.2., *infra*. Accordingly, petitioner's claim of evidentiary error is not cognizable on federal habeas review.

### D.      Sufficiency of the evidence (Issue V)

Petitioner contends that there is insufficient evidence to support his conviction. Petitioner raised this issue in his motion for relief from judgment. The trial court denied the motion without explanation.[3] In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U.S. at 364. Under *Jackson v. Virginia*, 443 U.S. 307 (1979), sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis added). In determining whether sufficient evidence exists to support a conviction, the reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright v. West*, 505 U.S. 277, 296-97 (1992).

Petitioner was convicted of first-degree premeditated murder in violation of M.C.L. § 750.316(1)(a), which provides the following elements "[a] person who commits any of the

---

[3] The Court notes that respondent's answer contains references and citations not relevant to this case. Specifically, respondent's answer with respect to this issue referred to a sexual assault and murder. *See* Answer at pp. 29-35 (docket no. 5). In addition, respondent addressed the elements of first-degree felony murder, M.C.L. § 750.316(1)(b), rather than first-degree premeditated murder, M.C.L. § 750.316(1)(a), the crime for which petitioner was convicted. *Id.* at p. 34. Despite respondent's inadequate briefing of this issue, the record establishes sufficient evidence to support petitioner's conviction.

following is guilty of first degree murder and shall be punished by imprisonment for life: (a) Murder perpetrated by means of poison, lying in wait, or any other willful, deliberate, and premeditated killing." *See People v. Bennett*, 290 Mich. App. 465, 472, 802 N.W.2d 627 (2010) ("[t]he elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation"). "In determining whether a defendant acted with premeditation, the trier of fact may consider (1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted." *People v. Moorer*, 262 Mich. App. 64, 77, 683 N.W.2d 736 (2004) (internal quotation marks omitted). Circumstantial evidence and reasonable inferences arising from that evidence can constitute satisfactory proof of the crime. *Id. See, e.g., People v. McRunels*, 237 Mich. App. 168, 181, 603 N.W.2d 95 (1999) ("[t]he intent to kill may be proved by inference from any facts in evidence").

    The evidence at trial, which includes both petitioner's statement and extensive circumstantial evidence, supports the jury's verdict. Ken Milbocker testified that a few hours before the murder, petitioner told Milbocker that he (petitioner) was going to "kill" the victim. Trial Trans. II at pp. 319-21 (docket no. 13). Petitioner made the following statements to law enforcement officers: he was in the victim's truck; the victim pulled out a knife and started stabbing petitioner for no reason at all; petitioner "swatted" the victim's hand; petitioner jumped out of the truck and the victim came at him with the knife; petitioner punched the victim who then let go of the knife; the victim tried hitting him; and finally petitioner "blacked out." Trial Trans. III at pp. 726-28, 732. When petitioner awoke, he had blood all over him and the victim was on the ground. *Id.* at p. 728. Petitioner put the victim in the truck, drove to the Milbocker's residence and asked Ken Milbocker to follow him out to a gravel pit (Winkelman's Excavating). *Id.* Petitioner drove

the truck into the back of the gravel pit and left it there with the victim's body. *Id.* Petitioner went home and burned his underwear, socks and a shirt. *Id.* at p. 731. Upon further questioning, petitioner claimed that he acted in self-defense, even when told that the victim had extensive injuries, including: a slit throat; "a hole in his . . . neck practically down to the spine;" and 43 stab wounds, including six wounds to the heart. *Id.* at pp. 732-34.[4]

　　　　In addition to Milbocker's testimony and petitioner's statement, the jury could have inferred the elements of the crime from petitioner's other actions. Petitioner attempted to conceal the crime by changing clothes, burning his bloody clothes, and hiding the victim's body in the victim's truck. *Id.* at pp. 735-36, 752-53. Petitioner also attempted to conceal the crime by telling Melissa Milbocker at about 6:00 or 6:30 a.m. that while he left with the victim earlier that morning, he had "dropped [the victim] off because [the victim] had passed out before they got to the party," Trial Trans. II at p. 369, and by telling Ken Milbocker that they needed "to get rid of [the victim's] truck at the gravel pit," *id.* at p. 324. The record also reflects that petitioner exerted great effort in avoiding capture by law enforcement. When petitioner was stopped by State Trooper James Volant, he attempted to flee, refused to comply with orders, took an aggressive stance, and required two physical strikes by two officers and a taser shot before he complied with orders to be handcuffed. Trial Trans. III at pp. 678-86.

　　　　In addition, the jury could have inferred petitioner's intent by considering the numerous wounds inflicted on the victim. Dr. David Start, a forensic pathologist, performed an autopsy on the victim. Trial Trans. II at pp. 396-97. The doctor testified that the victim was stabbed 44 times, including strikes to the neck and heart and had several "defensive" wounds. *Id.* at pp. 410,

---

[4] The Court notes that the forensic pathologist identified 44 stab wounds. However, whether the victim suffered 43 or 44 stab wounds is of de minimis importance.

416-18.  In addition, Dr. Start testified that "the number of injuries and the location of the injuries,

and the force involved, and the amount, would more tend to indicate a rage involved in this type of

homicide, that there is some anger on the part of the person who is inflicting these injuries.  Trial

Trans. II at p. 426.  The doctor  also testified that "[t]here are clearly multiple lethal injuries, and I

think the term [sic] that these injuries are excessive, certainly more than what I would expect if an

individual were simply trying to fend off another individual."  *Id.*   The doctor further testified that

after examining the wounds suffered by petitioner, it was his opinion that  "these wounds on the

hands of [petitioner]the Defendant are consistent with an offensive type injury, or someone holding

a slippery blade and the blade in the hand coming off the handle onto the blade."  *Id.* at pp. 424-25.

Viewing this evidence in the light most favorable to the prosecution, a reasonable

trier of fact could certainly conclude that petitioner committed first-degree premeditated murder.

Petitioner is not entitled to relief on this claim.

### E.       Ineffective assistance of counsel (Issue VI)

Petitioner contends that his trial counsel was constitutionally ineffective.  First,

counsel should have changed venue because the criminal trial took place "in a very small, close knit

community where news and gossip travel fast."  Petition  (docket no. 1-6 at p. 2).  Second, although

petitioner "explicitly demanded" that his trial counsel "produce an expert forensic pathologist, Dr.

Mihalakis, to contradict the prosecutor's expert witness, Dr. Start," defense counsel did not produce

Dr. Mihalakis.  *Id.*

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth a two-

prong test to determine whether counsel's assistance was so defective as to require reversal of a

conviction: (1) the defendant must show that counsel's performance was deficient and (2) the

defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that

counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S. at 687.  In making this determination, the court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690.  "[T]he threshold issue is not whether [petitioner's] attorney was inadequate; rather, it is whether he was so *manifestly* ineffective that defeat was snatched from the hands of probable victory."  *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (emphasis in original), *cert. denied* 508 U.S. 975 (1993).  Under *Strickland*, the reviewing court's scrutiny of counsel's performance is highly deferential, and the court is to presume that counsel rendered adequate assistance and made decisions with reasonable professional judgment. *Strickland*, 466 U.S. at 689-690.

## 1.  Change of venue

Petitioner contends that his trial counsel was ineffective for failing to change the venue of the trial.  "It is well established that if prejudicial pretrial publicity jeopardizes a defendant's right to a fair trial by an impartial jury, the court should grant the defendant a change in venue."  *Campbell v. Bradshaw*, 674 F.3d 578, 593 (6th Cir. 2012).  "Prejudice can be presumptive or actual."  *Id.*  As the court explained in *Campbell*:

> "Presumptive prejudice from pretrial publicity occurs where an inflammatory, circus-like atmosphere pervades both the courthouse and the surrounding community" and "is rarely presumed." [*Foley v. Parker*, 488 F.3d 377, 387 (6th Cir. 2007).] In the absence of presumed prejudice, "the trial court has a responsibility to confront the fact of the publicity and determine if the publicity rises to the level of 'actual prejudice.' " *Ritchie v. Rogers*, 313 F.3d 948, 962 (6th Cir.2002). "[A] searching voir dire of the prospective jurors is the primary tool to determine if the impact of the publicity rises to th[e] level" of actual prejudice. *Id.* At voir dire, the court must examine the jurors' statements to determine if there is a community-wide sentiment against the defendant; however, "[n]egative media coverage by itself is insufficient to establish actual prejudice." *Foley*, 488 F.3d at 387. When evaluating jurors, "mere prior knowledge of the existence of the case, or familiarity with the issues involved, or even some preexisting opinion as to the merits, does not in and

of itself raise a presumption of jury taint. . . ." *DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir.1998). Rather, "[t]he relevant question is 'did [the] juror swear that he could set aside any opinion he might hold and decide the case on the evidence, and should the juror's protestation of impartiality have been believed.' " *Foley*, 488 F.3d at 387 (second alteration in original) (quoting *Patton v. Yount*, 467 U.S. 1025, 1036, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984)). If a biased juror was seated who should have been dismissed for cause, we must reverse the conviction. *Hughes v. United States*, 258 F.3d 453, 463 (6th Cir.2001).

*Id.* at 593-94.

      Petitioner has presented no evidence that an "inflammatory, circus-like atmosphere" surrounded his trial such that the court should presume prejudice. Nor has petitioner shown actual prejudice demonstrating that any particular juror was biased. While petitioner pointed out that 10 potential jurors knew him, the victim, a potential witness or a location mentioned in the anticipated testimony, his claim of jury bias is based upon the sheer speculation that "[a]lthough the potential jurors were excused, the question must be asked, how many others should have spoken up but failed to?" *Id.* (docket no. 1-11 at pp. 36-37). Petitioner's speculation that the jurors who decided his case were secretly biased against him is not sufficient to establish that he suffered actual prejudice from a biased jury. In this regard, the record reflects that the trial court undertook an extensive and comprehensive jury selection process to find unbiased jurors which lasted for approximately three hours. Trial Trans. I at pp. 8-123 (docket no. 12).

      In the absence of either presumed or actual prejudice regarding the jury selection, there was no basis for petitioner's counsel to object to the jury or to request a change of venue. Conjecture alone will not suffice. Without more, the argument has no foundation, and counsel is not ineffective for failing to raise a meritless argument. *See Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013) ("[o]mitting meritless arguments is neither professionally unreasonable nor prejudicial"); *United States v. Sanders*, 165 F.3d 248, 253 (3rd Cir. 1999) ("[t]here can be no Sixth Amendment

deprivation of effective counsel based on an attorney's failure to raise a meritless argument");

*Ludwig v. United States*, 162 F.3d 456, 459 (6th Cir. 1998) ("[c]ounsel was not required to raise

meritless arguments to avoid a charge of ineffective assistance of counsel"); *Lilly v. Gilmore*, 988

F.2d 783, 786 (7th Cir. 1993) ("[t]he Sixth Amendment does not require counsel . . . to press

meritless issues before a court").   Petitioner's claim of ineffective assistance of counsel should be

denied.

### 2.      Expert witness

Petitioner also contends that his trial counsel was ineffective for failing to call an

expert witness, Dr. Mihalakis, to contradict the government's pathologist, Dr. Start.  During an offer

of proof with respect to Dr. Start, petitioner's counsel mentioned the reasons why he did not want

to call Dr. Mihalakis as an expert witness:

> Before the jury comes out, Your Honor, I just want to make a record.  I know
> I filed a witness list including an expert witness, Dr. Mihalakis, and just so the record
> is clear, the Court off the record during one of our discussions last week, indicated
> that it would allow me to call Dr. Mihalakis but ultimately I concluded that there
> would not be any need to call him, number one, I wanted to save the family money,
> and, number two, based upon my discussions, Dr. Mahalakis is basically consistent
> with what Dr. Start said, so I just wanted to make it clear because there was a motion
> filed by the Prosecution to strike my witnesses.

Trial Trans. II at pp. 393-94.  Trial counsel stated that the conclusion not to call Dr. Mahalakis "was

a strategy decision."  *Id.* at p. 394.  It appears that one reason for calling Dr. Mahalakis was to

establish that petitioner's hand wounds could be defensive wounds.  *Id.* at pp. 394.  However, during

the offer of proof, Dr. Start admitted that petitioner's hand wounds could be defensive in nature and

that "I can't absolutely rule that out."  *Id.* at p. 393.  Given that Dr. Start could not rule out defensive

wounds, petitioner's trial counsel felt that Dr. Mahalakis' testimony would be redundant:

> And it was – and my expert, potentially could be defensive, and if I – why be redundant and call an expert and go through the expense and everything else. There was a reason for that.

*Id.* at pp. 394-95. Indeed, on cross-examination, Dr. Start testified to the jury that he could not exclude the possibility that the wounds to petitioner's fingertips were defensive in nature from fending off an attack from a knife. *Id.* at p. 427.

In this case, counsel's trial strategy was to undercut Dr. Start's testimony regarding petitioner's "offensive" wounds by having the doctor admit that some of those wounds could have been "defensive" wounds. Having obtained that admission, if counsel had called Dr. Mahalakis, then the potential existed for the jury to hear petitioner's own expert provide a second explanation of the victim's extensive wounds. Based on this record, petitioner has not overcome the presumption that trial counsel's reliance on Dr. Start's concession was a matter of sound trial strategy. *See Strickland*, 466 U.S. at 689 ("a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy") (internal quotation marks omitted). Accordingly, petitioner's ineffective assistance of counsel claim should be denied.

## F.     Trial court's abuse of discretion (Issue VII)

In this issue, petitioner complains that the trial court abused its discretion because it: acted as an "unsworn witness" for the prosecution; defined the decedent (who suffered at least 43 stab wounds, including a slit throat) as a "victim" which, according to petitioner, "essentially instructed the jury that [petitioner] . . . must be guilty of something"; and that he allowed two "prejudicial character witnesses" to testify who opined as to the victim's "peacefulness." Petition

(docket no. 1-7).[5]  "[A] state trial court's alleged abuse of discretion, without more, is not a constitutional violation." *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001).  Even if this court were inclined to indulge in a discussion of the evidentiary minutia of the case, which it is not under the circumstances here, "[a] federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Accordingly, this issue is not cognizable on federal habeas review.

### G.    Trial court's failure to give a cautionary instruction regarding Ken Milbocker as an accomplice (Issue VIII)

Petitioner contends that the trial court violated his 14th amendment right to a fair trial and due process of law when it failed to *sua sponte* instruct the jury with a "cautionary instruction on accomplices, when evaluating the testimony of Ken Milbocker."  Petition (docket no. 1-8).  Petitioner contends that "the element of premeditation hinged on the credibility of Milbocker,  who provided the sole evidence that [petitioner] allegedly stated, 'I'm going to kill him.'"  *Id.*  For this reason, petitioner contends that trial court violated his due process rights when it failed to give cautionary instructions regarding the unreliability of accomplice testimony.  *See* Application  for leave to appeal (docket no. 1-11 at pp. 47-51).

A claim that a trial court gave an improper jury instruction is not cognizable on habeas review unless the petitioner shows that the erroneous instruction "so infected the entire trial that the resulting conviction violates due process." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  *See also Estelle v. McGuire*, 502 U.S. 62, 75 (1991) (erroneous jury instructions may not serve as the basis for habeas relief unless they have "so infused the trial with unfairness as to deny due

---

[5] The Court notes that although petitioner has framed his claims as abuse of discretion,  respondent's answer characterizes the claims as involving due process violations and judicial bias.

process of law"); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir.2000) (same). If the petitioner does not meet this burden, then he has failed to show that the jury instructions as given were contrary to federal law. *Id.*

In *People v. Allen*, 201 Mich. App. 98, 505 N.W.2d 869 (1993), the court summarized the content and operation of Michigan's accomplice instruction:

> CJI2d 5.5 defines "accomplice" as a "person who knowingly and willingly helps or cooperates with someone else in committing a crime." The instruction also informs jurors that they must decide whether the witness was an accomplice. CJI2d 5.6 instructs the jury, among other things, to be careful about accepting the accomplice's testimony.

*Allen*, 201 Mich. App. at 105. Here, petitioner presented no evidence to support his claim that Ken Milbocker was an accomplice in committing the murder. While petitioner refers to Milbocker's trip to the gravel pit to assist him in disposing of the victim's truck, there is no evidence that Milbocker was aware of the murder. On the contrary, Milbocker testified: that petitioner showed up at Milbocker's house at about 6:10 or 6:15 a.m. and woke him up by banging on the window; that petitioner said that the victim was "passed out"; and that petitioner needed Milbocker to give him a ride back from the gravel pit. Trial Trans. II at pp. 321-24. Milbocker also testified that when his wife came out, petitioner stated that the victim was passed out; that petitioner was going to drop off the victim's truck at the motor inn where the victim was staying; and that petitioner needed a ride back to his house. *Id.* While Milbocker admitted that he drove to the gravel pit and waited for petitioner, there is no evidence that Milbocker was involved in the murder or that he even knew the victim's whereabouts. In short, the record does not support petitioner's claim that Milbocker was an accomplice or that petitioner was entitled to a cautionary instruction on that basis. Given this record, the trial court's failure to give an unwarranted *sua sponte* accomplice instruction did not

"so infuse[] the trial with unfairness as to deny due process of law." *See Estelle*, 502 U.S. at 75.

Accordingly, this claim of error should be denied.

## H.      Errors regarding restitution (Issue IX)

The judgment in this case included restitution in the amount of $10,969.95. *See* Judgment of Sentence. Petitioner contends that the trial court erred in awarding restitution payable for some expenses incurred by the victim's family members (airline tickets, car rental, motel for trial, meals for trial, lost wages and motel for funeral) totaling $2,352.61. Petition (docket no. 1-11 at pp. 52-54). Petitioner contends that the purpose of restitution under Michigan law is to compensate the injured party, citing M.C.L. § 780.766 and M.C.L § 769.1(a), and that his trial counsel was ineffective for failing to object at sentencing to the alleged "excessive restitution." *Id.*

Petitioner's claim regarding the trial court's award of restitution is not cognizable on federal habeas review.

> Under § 2254, subject matter jurisdiction exists "only for claims that a person 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Dickerson v. United States*, 530 U.S. 428, 439 n. 3 (2000) (quoting 28 U.S.C. § 2254(a)). In general, fines or restitution orders fall outside the scope of the federal habeas statute because they do not satisfy the "in custody" requirement of a cognizable habeas claim. *See United States v. Watroba*, 56 F.3d 28 (6th Cir.1995) (holding that § 2255 does not grant subject matter jurisdiction over restitution orders); *Michaels v. Hackel*, 491 F. App'x 670, 671 (6th Cir.2012) (stating that a fine is not cognizable under § 2254 and citing *Watroba*, 56 F.3d at 29); *see also Bailey v. Hill*, 599 F.3d 976, 979 (9th Cir.2010) (holding that fines and restitution orders are not cognizable under § 2254); *Washington v. Smith*, 564 F.3d 1350, 1350–51 (7th Cir.2009) (same); *Tinder v. Paula*, 725 F.2d 801, 804 (1st Cir.1984) (collecting cases); Randy Hertz & James S. Liebman, *1 Federal Habeas Corpus Practice and Procedure* § 8.2(e) (6th ed.2012). Further, "collateral relief from a noncustodial punishment, such as a fine or restitution order, is not made readily available to a defendant just because he happens at that time to also be subject to custodial penalties." Brian R. Means, *Federal Habeas Manual* § 1:21 (2012 ed.).

*Washington v. McQuiggin*, – Fed. Appx. –, 2013 WL 3466439 at *5 (6th Cir. 2013). *See Michaels*, 491 Fed. Appx. at 671 (rejecting the petitioners' claim that a fine imposed by a state court is

sufficient to render them "in custody" for purposes of district court's habeas jurisdiction). As one court observed with respect to a habeas claim arising from restitution, "[b]ecause the appropriate relief on this claim would be amendment of the restitution order and not release from custody, the grant of a writ of habeas corpus is inappropriate." *Burnett v. Bell*, No. 2:08-cv-11901, 2010 WL 2089335 at *8 (E.D. Mich. May 24, 2010). Similarly, even if this Court found that the state court's order of restitution was excessive, such a finding would not result in petitioner's release from custody, which is the remedy available to him in this habeas action. Accordingly, petitioner's claims that the trial court improperly awarded restitution to the victim's family members, and his related claim that his counsel failed to object to that award, are not cognizable on habeas review and should be denied.

## V. Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.


Dated: August 30, 2013                    /s/ Hugh W. Brenneman, Jr.
                                          HUGH W. BRENNEMAN, JR.
                                          United States Magistrate Judge



ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).